# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Laser Aiming Systems Corporation, Inc.,      Civil No. 15-510 (DWF/FLN)

    Plaintiff,

v.      **MEMORANDUM OPINION AND ORDER**

Eric Bondhus, Carl Bondhus,
and Bondhus Arms, Inc.,

    Defendants.

---

Craig S. Krummen, Esq., Winthrop & Weinstine, PA, counsel for Plaintiff.

Edwin E. Voigt, II, Esq., and Richard A. Arrett, Esq., Vidas Arrett & Steinkraus PA, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on Plaintiff Laser Aiming Systems Corporation, Inc.'s ("Laser Aiming") Motion for Summary Judgment. (Doc. No. 13.) For the reasons set forth below, the Court grants Laser Aiming's motion.

## BACKGROUND

### I.  Factual Background

Laser Aiming manufactures and markets green laser sights mounted to guns, for military, law enforcement, and civilian use. (Doc. No. 16 at ¶ 2, Ex. 1 ("Hedeen Aff.") ¶ 2.) On or about March 1, 2009, Laser Aiming hired Defendants Eric Bondhus and Carl Bondhus to assist with production and product engineering, respectively. Both Eric

Bondhus and Carl Bondhus executed employment agreements with Laser Aiming. (*Id.* ¶ 35, Ex. B ("Employment Agreements").)[1] The Employment Agreements are the same in all material respects.

The relevant portions of the Employment Agreements provide for two potential incentive bonuses. First, an "an annual incentive bonus" allowed Carl or Eric Bondhus to receive a bonus "equal to ¾ of 1% (.75%) of the Company's gross revenues from any products in which [he] had a role in designing or improving." (Employment Agreements § 3(first(b))) (the "Bonus Provision").) In addition, the Employment Agreements provided an incentive bonus "payable with respect to any product conceived by [one or both Carl and Eric Bondhus] during [his/their] employment . . . for which the Company later receives a patent." (*Id.* § 3(second(b))) (the "Patent Bonus Provision").)[2]

On February 3, 2011, Eric Bondhus's employment with Laser Aiming was terminated. (Hedeen Aff. ¶ 4.) On February 15, 2011, Laser Aiming terminated the employment of Carl Bondhus. (*Id.* ¶ 15.)

On or about July 26, 2012, the Bondhus brothers sued Laser Aiming (the "Prior Lawsuit"). (Doc. No. 17 ("Handler Aff.") ¶ 4, Ex. C.) In the Prior Lawsuit, the Bondhus brothers asserted claims against Laser Aiming for breach of the Employment

---

[1]     Both Carl and Eric Bondhus are named Defendants in this action, as is Bondhus Arms, Inc., a Minnesota company. The Court refers to all defendants collectively as "Defendants" and to Eric Bondhus and Carl Bondhus, together, as the "Bondhus brothers."

[2]     The Employment Agreements contain two "3(b)" sections. The Court refers to them, respectively as the "Bonus Provision" and "Patent Bonus Provision," as defined above.

Agreements. (*Id.*) Specifically, the Bondhus brothers alleged that Laser Aiming failed to pay incentive bonuses under both the Bonus Provision and the Patent Bonus Provision. (*Id.* ¶¶ 6-7, 17-18.)

On or about December 4, 2012, and prior to the resolution of the Prior Lawsuit, United States Design Patent No. D672,005 (the "D'005 Patent") issued to Laser Aiming. (Handler Aff. ¶ 5, Ex. D.) During the discovery phase of the Prior Lawsuit, it was also revealed that additional patent applications were filed by Laser Aiming, the subject matter which the Bondhus brothers assert they conceived. (*See* Doc. No. 20 ("Bondhus Decl.") ¶¶ 24, 28-45, 53-59.)

On or about October 29, 2013, Laser Aiming and the Bondhus brothers entered into a Settlement Agreement and Release in the Prior Lawsuit. (Handler Aff. ¶ 6, Ex. E (the "Settlement Agreement.") The parties were able to resolve their differences with respect to the Bondhus brothers' claims as to the Bonus Provision, but Defendants assert that the parties were not able to resolve the dispute regarding the Patent Bonus Provision. Thus, Defendants assert that they carved out an exception to the release for "contractual patent claims" under the Patent Bonus Provision.

> The release provision of the Settlement Agreement provides in relevant part:
>
> <u>Mutual Release of Claims</u>. In consideration of the terms and conditions of this Settlement Agreement . . . each of the parties hereto . . . do hereby release and forever discharge the other party . . . from any and all suits, proceedings, claims [], complaints, judgments, executions, actions, and causes of actions [sic], . . . whether liquidated or unliquidated, known or unknown, asserted or unasserted, . . . since the beginning of time to the date of this Settlement Agreement, that either party may have against the other, including but without limiting in any way the breadth or generality of the

3

      foregoing, any and all claims that were asserted or could have been asserted in the litigation, except:

         . . .

         b. contractual patent claims under § 3(b)(second(b)) [the Patent Bonus Provision] of the Employment Agreements between Laser Aiming and Eric Bondhus and Carl Bondhus.

(*Id.* § 3(b).)

After signing the Settlement Agreement, the Bondhus brothers made demands for payments under the Patent Bonus Provision from Laser Aiming. (Compl. ¶ 36; Bondhus Decl. ¶ 24.) On January 7, 2014, Laser Aiming filed the present action for: (1) Declaratory Judgment; (2) Breach of Contract; (3) Tortious Interference with Contract; (4) Tortious Interference with Business Expectancy; and (5) Specific Performance. (Doc. No. 1, Ex. 1 ("Compl.").)[3] With respect to Count I, Laser Aiming seeks declaratory judgment that it does not owe an incentive bonus to either Eric Bondhus or Carl Bondhus for purportedly conceiving of several of Laser Aiming's products. (*Id.* ¶¶ 40-45.) Defendants filed an Answer, Affirmative Defenses, and Counterclaims. (Doc. No. 1, Ex. 3 ("Answer and Countercl.").)

Relevant to the present motion, Defendants assert the following counterclaims: (1) Declaratory Judgment of Inventorship for the D'005 Patent (First Counterclaim); (2) Declaratory Judgment of Inventorship of Pending United States Patent Applications or Issued United States Patents (Second Counterclaim); (3) Declaratory Judgment of Wrongful Abandonment or Withdraw of Allowed Patent Applications (Third

---

[3] Laser Aiming's Complaint was originally filed in state court, and this action was later removed to this Court on February 16, 2015. (Doc. No. 1.)

Counterclaim); (4) Breach of Contract (Fourth Counterclaim); and (5) Declaratory Judgment of Unenforceability of the D'005 Patent (Seventh Counterclaim). (Answer and Countercl.)

Now before the Court is Laser Aiming's motion for summary judgment as to Defendants' First, Second, Third, and Seventh Counterclaims in their entirety and as to Defendants' Fourth Counterclaim to the extent that it is based on patent applications as opposed to an actual patent that was issued to Laser Aiming.

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his

pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Summary Judgment on Counterclaims

Laser Aiming seeks summary judgment on Defendants' First, Second, Third, Fourth, and Seventh Counterclaims, arguing that these counterclaims were released in the Settlement Agreement. The Court addresses each separately.

### A.    First Counterclaim

In their First Counterclaim, Defendants seek a declaratory judgment ordering the identification of the Bondhus brothers as joint inventors of the D'005 Patent. Laser Aiming contends that it is entitled to summary judgment on this counterclaim because the counterclaim was released by the Settlement Agreement. Defendants argue that this counterclaim falls within the exception to the settlement release. In particular, Defendants argue that the counterclaim alleges that the Bondhus brothers are joint inventors of the subject matter of the D'005 Patent, and that this argument is directly related to showing that Carl and Eric Bondhus conceived of the ornamental design of the D'005 Patent under the Patent Bonus Provision of the Employment Agreements.

Section 3 of the Settlement Agreement in the Prior Lawsuit provides, in relevant part, that the parties "release and forever discharge the other party" of all claims "since the beginning of time to the date of this Settlement Agreement, that either party may have against the other, *including but without limiting in any way the breadth or generality of the foregoing*, any and all claims that were asserted or could have been asserted in the litigation." (Settlement Agreement § 3 (emphasis added).) The parties do not dispute

6

that the broad language of the release covers Defendants' First Counterclaim; instead, the parties disagree as to whether the counterclaim falls within the exception to the release that covers "contractual patent claims under [the Patent Bonus Provision] of the Employment Agreements." (*Id*. § 3(b).)

In their Notice of Removal, Defendants asserted that: "The FIRST COUNTERCLAIM requires determination of the inventorship of Carl Bondhus and/or Eric Bondhus to [the D'005 Patent], and correction of the inventorship pursuant to 35 U.S.C. § 256, which claim relates to the Patent Act." (Doc. No. 1 ¶ 8.) Defendants also represented that the counterclaims arising under the Patent Act provide the basis for removal to federal district court. (*Id*. ¶ 5.) It is apparent, based on Defendants' representations, as well as the allegations related to First Counterclaim, that the First Counterclaim is a statutory claim under the Patent Act. Specifically, Defendants cite directly to a statutory provision aimed at the correction of errors regarding the named inventors of issued patents. *See* 35 U.S.C. § 256. As such, the First Counterclaim does not fall within the exception of the parties' release for "contractual patent claims under" the Patent Bonus Provision. While on some level the issues inherent in the claim may overlap with the issue of whether the Bondhus brothers conceived of the design of the D'005 Patent so as to be entitled to payments under the Patent Bonus Provision, the counterclaim itself is a statutory claim to correct inventorship. For this reason, the Court concludes that the First Counterclaim does not fall within the exception and was therefore released pursuant to the parties' Settlement Agreement.

Defendants also argue that this counterclaim (as well as the Second, Third, and Seventh Counterclaims) relate to subject matter for which the Federal Court has exclusive jurisdiction and could not have been asserted in the Minnesota state court action. Defendants contend that the Settlement Agreement release was directed only to state court claims "that were asserted or could have been asserted in the litigation" and, therefore, such claims are not barred from this action. The Court disagrees. The language of the release is much broader than Defendants assert and specifically states that the parties agreed to release any and all claims "known or known or unknown, asserted or unasserted . . . since the beginning of time to the date of this Settlement Agreement, that either party may have against the other, *including but without limiting in any way the breadth or generality of the foregoing*, any and all claims that were asserted or could have been asserted in the litigation." (Settlement Agreement ¶ 3(emphasis added).) On its face, the release is not limited to claims that were or could have been brought in the Prior Litigation.

Accordingly, Laser Aiming is entitled to summary judgment on the First Counterclaim.[4]

### B. Second Counterclaim

In their Second Counterclaim, Defendants seek a declaratory judgment ordering the identification of the Bondhus brothers as inventors on two patent applications—Serial

---

[4] Defendants also argue that there is a genuine issue of material fact as to whether the Bondhus brothers "conceived" the subject matter of the D'005 Patent. This argument is of no avail, because, as explained above, the First Counterclaim is a statutory claim and was released.

8

Nos. 12/983711 and 29/409703.  (Countercl. ¶¶ 144, 155.)  Laser Aiming seeks summary judgment on this claim, arguing that, as with the First Counterclaim, the Second Counterclaim does not fall within the exception of the Settlement Agreement release because it is not a "contractual patent claim" under the Patent Bonus Provision.  Again, Defendants argue that the Second Counterclaim is directly related to showing that the brothers conceived of the subject matter of two patent applications and, therefore, falls under the Patent Bonus Provision and was not released.

In their Notice of Removal, Defendants stated that the Second Counterclaim "requires determination of the inventorship of Carl Bondhus and/or Eric Bondhus to two patent applications, namely 12/983711 and 29/409730, which claim relates to the Patent Act."  (Doc. No. 1 ¶ 9.)  In addition, the allegations relating to the counterclaim specifically seek the correction of the inventorship on the patent applications.  For the same reasons discussed with respect to the First Counterclaim, the Court concludes that the Second Counterclaim is a statutory claim of inventorship under the Patent Act.  As such, it does not fall within the narrow exception of the Settlement Agreement for "contractual patent claims under" the Patent Bonus Provision.  Moreover, the Court notes that, by its plain language, the Patent Bonus Provision is only triggered if Laser Aiming "receives a U.S. Patent" and other criteria are met.  (*See* Patent Bonus Provision ("payable with respect to any product conceived by [one or both Carl and Eric Bondhus] . . . for which the Company later receives a patent") (emphasis added).)  There is no allegation that Laser Aiming has received a patent for either of the asserted

9

applications. Therefore, for this additional reason, the Second Counterclaim does not fall within the exception to the release.

Because the Second Counterclaim does not fall within the exception to the release, Laser Aiming is entitled to summary judgment on Defendants' Second Counterclaim.

### C. Third Counterclaim

In their Third Counterclaim, Defendants seek a declaratory judgment "of wrongful abandonment or withdrawal of allowed patent applications for which Carl Bondhus and/or Eric Bondhus are not properly identified as inventors." (Countercl. ¶ 158.) Defendants assert that, based on various alleged breaches of good faith and reasonable care, they are "entitled to have the cooperation of [Laser Aiming] in reviving" two patent applications. (Countercl. ¶ 241.) In particular, Defendants argue that Laser Aiming had a duty to pay the issue fees of the two asserted patent applications (Serial Nos. 12/983711 and 29/409730), and that Laser Aiming acted in bad faith when it did not pay the fees. Defendants assert that had Laser Aiming paid the fees for the pending applications, the patents would have issued and Laser Aiming would have owed the Bonhus brothers bonuses under the Patent Bonus Provision. Laser Aiming seeks summary judgment on the Third Counterclaim, arguing again that the claim was released under the Settlement Agreement.

The Court concludes that the Third Counterclaim was released in the parties' Settlement Agreement. In their Notice of Removal, Defendants asserted that the Third Counterclaim "relates to the wrongful abandonment of the two patent applications, and requires the specific performance of Plaintiff's [sic] to cooperate in reviving the patent

applications and issuing them, which claim relates to the Patent Act." (Doc. No. 1 ¶ 10.) As explained above with respect to the First and Second Counterclaims, the Third Counterclaim is a statutory claim under the Patent Act, not a contractual claim under the excepted provision of the release. Moreover, under sections 6(a) and (c) of the Employment Agreements, the Bondhus brothers assigned to Laser Aiming all "right, title, and interest . . . in and to every idea, concept, invention and improvement (whether patented or not) conceived or developed by [the Bondhus brothers] during the term of employment." (Employment Agreement § 6(a), (c).) And with respect to such intellectual property, Laser Aiming maintained the right "to file and prosecute such registration applications and other documents it deems useful to protect its rights hereunder." (*Id.* § 6(c).) Defendants have not pointed to any contractual provision in the Employment Agreements requiring Laser Aiming to prepare and prosecute patent applications.[5]

For the above reasons, Laser Aiming is entitled to summary judgment on Defendants' Third Counterclaim.

### D.    Fourth Counterclaim

In their Fourth Counterclaim, Defendants assert a claim for breach of contract. (Countercl. ¶¶ 242-51.) Defendants explain that this counterclaim is for breach of the Patent Bonus Provision of the Employment Agreements. Relevant to the present motion,

---

[5]     To the extent that Defendants argue that Laser Aiming had an implied duty to prosecute the patent applications, that argument is rejected for the same reasons discussed below with respect to the Fourth Counterclaim.

11

Defendants allege that Laser Aiming breached the Employment Agreements "by not paying the issue fees for the allowed applications of 12/983711 and 29/3407730." (*Id.* ¶ 247.)[6] Defendants argue that Laser Aiming had an implied duty to pay the issue fees for two allowed patent applications, the subject matter for which was allegedly conceived by the Bondhus brothers.

Laser Aiming seeks summary judgment on this counterclaim to the extent that it relates to the two patent applications. In particular, Laser Aiming argues that the Patent Bonus Provision contains no legal obligation under which Laser Aiming must pay an incentive bonus on patent applications, but that the incentive bonus is triggered only when and if Laser Aiming receives a patent and other criteria are met. The Court agrees.

As discussed above, the language of the Patent Bonus Provision is clear—it comes into play when Laser Aiming receives a patent and other criteria are met. Moreover, to the extent that Defendants argue that the covenant of good faith and fair dealing should be implied into the Employment Agreements, the Court notes that Minnesota law forecloses such an argument. First, under Minnesota law, the implied covenant of good faith and fair dealing does not apply to employment agreements. *See Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1432 (2014); *see also Cengage Learning, Inc. v. Earl*, Civ. No. 08-1285, 2008 WL 4857938, at *4 (D. Minn. Nov. 10, 2008) ("Minnesota law recognizes this implied covenant in all contracts besides sales and employment contracts."). Second, under Minnesota law, the implied covenant of good faith and fair

---

[6] Laser Aiming does not move for summary judgment to the extent that the Fourth Counterclaim relates to the D'005 Patent, which is a "patent received" by Laser Aiming. (Doc. No. 15 at 14-15.)

dealing reinforces existing contractual duties; it does not create new ones. *See Watkins Inc. v. Chilkoot Distrib., Inc.*, 719 F. 3d 987 (8th Cir. 2013); *see also Cengage*, 2008 WL 4857938, at *4 ("Minnesota law does not recognize a cause of action for breach of the implied covenant separate from an underlying breach of contract."). Because Laser Aiming was under no contractual duty to file, prosecute, or pay fees for a patent application, there can be no implied duty to do the same.

The Court grants summary judgment on the Fourth Counterclaim to the extent it is directed to patent applications.

### E.   Seventh Counterclaim

In their Seventh Counterclaim, Defendants seek a declaration of unenforceability of the D'005 Patent. (Countercl. ¶¶ 46-51.) Laser Aiming argues that the counterclaim involves the determination of the validity and enforceability of the patent, and therefore does not fall within the exception of the release. Defendants argue that the release only covers claims that were asserted or could have been asserted in the litigation, and because the validity of the D'005 Patent arises under federal law for which federal courts have exclusive jurisdiction and could not have asserted in a Minnesota court action.

Again, in their Notice of Removal, Defendants indicated that the Seventh Counterclaim "involves the determination of the validity and enforceability of [the D'005 Patent], and therefore this claim relates to the Patent Act." (Doc. No. 1 ¶ 14.) In addition, in their memorandum in opposition to the present motion, Defendants acknowledge that this counterclaim arises exclusively under federal law. However, as explained above, claims under the Patent Act do not fall within the exception to the

Settlement Agreement release.  Moreover, also as explained above, the release is not limited to claims that could have been asserted in the Prior Litigation.

Accordingly, summary judgment on the Seventh Counterclaim is warranted.

## CONCLUSION

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Laser Aiming's Motion for Summary Judgment (Doc. No. [13]) is **GRANTED** and Defendants' First, Second, Third, and Seventh Counterclaims are **DISMISSED WITH PREJUDICE**, and to the extent that Defendants' Fourth Counterclaim pertains to the asserted patent applications, it is **DISMISSED WITH PREJUDICE**.

Dated:  March 7, 2016            s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge